1  Andrea Lovell, Bar No. 019882
   alovell@littler.com
2  Melissa L. Shingles, Bar No. 032645
   mshingles@littler.com
3  LITTLER MENDELSON, P.C.
   Camelback Esplanade
4  2425 East Camelback Road
   Suite 900
5  Phoenix, Arizona  85016
   Telephone:   602.474.3600
6  Fax No.:      602.957.1801

7  Breanne Sheetz Martell, WSBA #39632
   *(admitted pro hac vice)*
8  bsmartell@littler.com
   Brian H. Rho, WSBA #51209
9  *(admitted pro hac vice)*
   brho@littler.com
10 LITTLER MENDELSON, P.C.
   One Union Square
11 600 University Street, Suite 3200
   Seattle, WA 98101-3122
12 Telephone:   206.623.3300
   Fax No.:      206.447.6965
13
   Attorneys for Defendant
14 MHM Health Professionals, LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wanda Keener, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MHM Health Professionals, LLC,<br><br>Defendant. | Case No. 2:22-cv-00358-SRB<br><br>**JOINT MOTION TO APPROVE SETTLEMENT AND DISMISS WITH PREJUDICE** |

## I.   INTRODUCTION

Plaintiff Wanda Keener, on behalf of herself and the six Opt-In Plaintiffs, and Defendant MHM Health Professionals, LLC ("Defendant") have reached a settlement in this lawsuit (the "Action"). The settlement was the result of arm's-length negotiations conducted by experienced counsel for all Parties.

The Parties' settlement resolves the claims of the Named Plaintiff and the Opt-In Plaintiffs ("Settlement Collective Members").[1] After approval, the Settlement Payments will be distributed to all Settlement Collective Members by Plaintiffs' Counsel. All Settlement Collective Members will release claims that were or could have been asserted based on the facts or circumstances alleged in the Second Amended Collective Complaint against Defendant and the other Released Parties as stated in the Agreement.

For the reasons explained below, the Parties' Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. As a result, the Parties respectfully and jointly request the Court approve their Settlement Agreement (herein "Agreement"), attached as Exhibit 1.[2]

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Defendant in this case is MHM Health Professionals, LLC, an entity that provides health services, pharmacy management, and clinical operations related to mental health, medical, dental and forensic services to hundreds of facilities across the nation. Named Plaintiff worked as a nurse. Second Amended Collective Action Complaint ¶ 5, ECF No. 25. Named Plaintiff worked in the Perryville correctional facility of the Arizona Department of Corrections. The additional Plaintiffs who opted into this case also worked as non-exempt employees in the State of Arizona.

Plaintiff alleges that non-exempt employees of Defendant regularly worked more than 40 hours per week and were not paid for all hours worked. *Id.* at ¶¶ 13, 15-25, 29, 34-35. Plaintiff alleges that Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (the "FLSA"), by failing to pay her, and the Opt-In Plaintiffs, overtime pay for all time worked in excess of forty hours in a workweek.

---

[1] All Capitalized terms are defined in the Settlement Agreement.

[2] The Parties are publicly filing a redacted version of the settlement agreement and filing the entire agreement provisionally under seal in conjunction with their Joint Motion for Leave to File Portions of Settlement Agreement Under Seal.

1  Defendant denies any wrongdoing and denies that Plaintiff and Settlement Collective
2  Members are entitled to any damages. Def's Answer to Second Amended Collective Action
3  Complaint ¶¶ 1-2, 15-37, ECF No. 28. Defendant claims that Plaintiff and Opt-In Plaintiffs
4  were compensated for all hours worked and were properly paid all overtime wages, and that
5  Defendant complied with all of its legal obligations. *Id.* at ¶¶ 5, 10, 13, 20, 23-24. Defendant
6  asserted a number of defenses related to potential certification, the merits, and damages. *Id.*
7  at pp. 8-12.

8  **B.    Overview of Investigation, Litigation, and Settlement Negotiations**

9  Named Plaintiff filed this Action on March 8, 2022. Complaint, ECF No. 1. Pursuant
10 to the Court's June 27, 2022 Case Management Order, ECF No. 24, the Parties met on
11 October 12, 2022, to engage in good-faith settlement discussions. On October 21, 2022, the
12 Parties filed their Joint Report on Settlement. ECF No. 34. Through the Joint Report, the
13 Parties informed the Court that they would continue their settlement discussion. *Id.* Six
14 employees in addition to the Named Plaintiff filed Consent to Join Forms, became Opt-In
15 Plaintiffs, and remain in the Action to date.

16 Plaintiffs' counsel thoroughly analyzed the merits of the case and the value of
17 Plaintiff's and Opt-In Plaintiffs' claims during the prosecution of this action. The process
18 included, among other things, (1) multiple conferences with Named Plaintiff and Opt-in
19 Plaintiffs; (2) inspection and analysis of the documents and materials provided by Plaintiff,
20 Opt-in Plaintiffs, and Defendant; (3) evaluation of the various legal positions taken and
21 defenses raised by Defendant; (4) analysis of data to compute potential damages to Named
22 Plaintiff and Opt-In Plaintiffs; and (5) investigation regarding comparable settlements in
23 similar cases.

24 After numerous communications, the Parties reached a settlement on November 11,
25 2022, and thereafter executed a memorandum of understanding reflecting material terms
26 forming the basis of the Settlement Agreement that is now being submitted for this Court's
27 consideration. The investigation conducted in this matter, as well as discussions between
28 counsel, have been more than sufficient to give the Plaintiffs and their Counsel a sound

understanding of the merits of their positions and to evaluate the claims in the case. Plaintiffs and their Counsel believe that the settlement with Defendant for the consideration and on the terms set forth in the Agreement is fair and reasonable and is in the best interest of Named Plaintiff and Opt-in Plaintiffs in light of all known facts and circumstances, including the risk of a significant delay, the likelihood that Defendant would prevail on its defenses, and numerous potential appellate issues.

### III. SUMMARY OF THE SETTLEMENT TERMS

#### A. The Settlement Fund

Defendant has agreed to pay the Gross Settlement Fund amount to settle the claims in this Action, which shall be used to provide for (i) all settlement payments to all Settlement Collective Members; (ii) Service Awards for the Named Plaintiff and one Opt-in Plaintiff (Zonette Tam) who joined at the beginning of the case; and (iii) all past, present, and future attorneys' fees, costs, expenses, and disbursements incurred by Named Plaintiff or her counsel in this Action regarding the Settlement Collective Members, including but not limited to any expenses related to settlement administration. Ex. 1, Settlement Agreement, § III.5. The employer's share of applicable payroll taxes will be paid by Defendant separately. *Id.*

#### B. Settlement Collective Members and Distribution of Settlement Checks

The Settlement Agreement covers seven individuals, including the Named Plaintiff and six Plaintiffs who have opted into the Action and not withdrawn their consents to date. *Id.* at p. 1. The Settlement does not resolve or release the claims of individuals who have not previously opted into the Action or Opt-In Plaintiffs who previously withdrew from the Action.

The Parties have mutually agreed Plaintiffs' Counsel will administer this settlement. Should the Court approve the Settlement, Defendant will fund the Settlement after the Effective Date and Plaintiffs' Counsel will shortly thereafter mail to Settlement Collective Members their Settlement Payments along with a copy of the Settlement Notice. *Id.* at § III.9. A copy of the Settlement Notice is included as Exhibit B to the Settlement Agreement.

### C.  Release for the Named Plaintiff and Opt-in Plaintiffs

The Settlement Collective Members will release the Released Parties from all claims or causes of action that were alleged in the Action or could have been alleged in the Action arising out of the facts or circumstances alleged in the Second Amended Collective Complaint as defined in the Settlement Agreement. *Id.* at § III.4. Named Plaintiff Keener and Opt-in Plaintiff Tam have agreed to a general release in exchange for their Service Awards. *Id.*

### D.  Calculation of Individual Settlement Payments, Tax Treatment, and Unclaimed Settlement Funds

Each Settlement Collective Member's Settlement Payment has been calculated using a calculation methodology developed by Plaintiffs' Counsel to treat all Settlement Collective Members equitably based on Counsel's investigation and information provided by the Opt-in Plaintiffs. *Id.* at § III.7. The settlement calculation methodology is set forth and explained in the Settlement Agreement. *Id.* In addition, Defendant offered and the Named Plaintiff and Opt-In Plaintiff Tam accepted additional amounts in exchange for a general release of claims, as set forth in the Settlement Agreement. *Id.* § III.6(d).

Half of each Settlement Payment will be allocated to wages, subject to required withholdings, and the other half will be allocated to non-wages, with appropriate tax reporting. *Id.* at § III.6.e. Any Settlement Payments that remain uncashed after the Void Date will be donated to the *cy pres* charity selected by the Parties. *Id.* at § III.8.

### E.  Service Awards and Attorneys' Fees and Litigation Costs

Plaintiffs are seeking Service Awards for the Named Plaintiff and Opt-in Plaintiff Tam to be paid from the Gross Settlement Fund as stated in the Settlement Agreement. *Id.* at § III.6.b. Plaintiffs' Counsel is also requesting attorneys' fees and litigation costs to be paid from the Gross Settlement Fund. *Id.* at § III.6.c.

## IV. THE FLSA SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

An FLSA collective action is distinguishable from a class action in that individuals affirmatively choose to participate, be represented by counsel, and be bound by the result. *See* 29 U.S.C. § 216 (b); *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 989 (C.D. Cal. 2006). Therefore, the reasons for heightened judicial scrutiny of settlements under Rule 23 are not present in FLSA opt-in settlements. *See Millan v. Cascade Water Services, Inc.*, 310 F.R.D 593, 607 (E.D. Cal. 2015) (FLSA settlement approval requirements are less stringent than Rule 23 classes because individuals that do not opt-in are not bound by the settlement terms).

Courts in this district evaluate a proposed FLSA Settlement under the standard established in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), to ensure the settlement constitutes a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *See, e.g., Juvera v. Salcido*, No. CV-112119PHX-LOA, 2013 WL 6628039, at *3 (D. Ariz. 2013) ("[I]n a FLSA case or class action, the parties must seek the district court's approval of the settlement's terms to ensure that it is enforceable and fair."). *See also Hand v. Dionex*, No. CV 06-1318-PHX-JAT, 2007 WL 3383601,*1 (D. Ariz. 2007); *In re: Sepracor, Inc. FLSA Litigation*, No. CV-09-1409-PHX-DGC, 2009 U.S Dist. LEXIS 97791,*5 (D. Ariz. 2009). For the court to approve an FLSA settlement, "the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned. The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness. And the settlement agreement must contain an award of reasonable attorneys' fees." *Lynn's Food Stores*, 679 F.2d at 1353.

### A. The Proposed Settlement Resolves a Bona-Fide Dispute Between the Parties

This settlement is a result of contested litigation and was reached only after the Parties performed an extensive investigation and litigated this matter, as described in Section II, *supra*. The Parties vigorously contested numerous substantive issues, including

whether certain preliminary and postliminary activities are compensable under FLSA, whether Defendant's policy of compensating Plaintiffs for missed meal breaks was adequate, whether Defendant had knowledge of unpaid overtime work, the appropriateness of liquidated damages, and whether this case could be tried as a collective action. The Settlement was reached only after the Parties engaged in a series of extensive settlement negotiations.

Plaintiff alleged that Defendant violated the FLSA by failing to pay overtime wages in two general areas: (1) auto-deducted meal breaks; and (2) pre-shift and post-shift security screenings. In support of her position, Plaintiff relied upon the United States Department of Labor's investigation and findings with respect to alleged liability and purported amounts owed. Defendant denied each of Plaintiff's contentions and asserted that it was fully compliant with the FLSA and other relevant laws. Defendant also relied on precedent from the Supreme Court case, *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014), which held that time spent in security screening is not compensable. Defendant further argued that its auto-deduction system for meal breaks does not violate the FLSA because it requires employees to submit timekeeping exception ("TKE") forms to report missed meal breaks and there are thousands of instances where employees reported and were paid for working through their meal breaks in accordance with its policies. *See Lewis v. MHM Health Professionals, LLC*, No. 4:22-cv-00228-SEP (E.D. Mo. July 29, 2022) (Motion to Dismiss, ECF No. 39) (moving for dismissal with prejudice of similar collective claims based on the DOL's investigation). Defendant rejects the Department of Labor's investigation and findings and maintains that Plaintiff and Opt-in Plaintiffs are entitled to no recovery.

This procedural posture, where Defendant denies that it violated the FLSA and settlement was reached only after extensive settlement negotiations, supports the finding that a bona fide dispute exists between the Parties.

### B.   The Proposed Settlement is Fair and Reasonable

This settlement is the product of arm's-length negotiations by experienced counsel and has the effect of (1) providing monetary relief to those Settlement Collective Members

who chose to opt into the Action, (2) in exchange for a limited release of claims, and (3) eliminating the inherent risk both sides would face if this litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness attaches to the proposed settlement. *Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement to demonstrate fairness).

The litigation was settled only after Plaintiff received opt-in paperwork and documents from putative collective members; engaged in an informal exchange of information; and participated in extended settlement negotiations. Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt. As stated previously, the Parties disagreed about numerous legal and factual issues in the case.

The Settlement compensates Settlement Collective Members who chose to participate in this Action and eliminates the possibility of conditional certification being denied, decertification of the collective, loss on summary judgment, loss at trial, or loss on appeal. Consequently, this Settlement brings value and certainty now, as opposed to years from now. The substantial benefit that Settlement Collective Members will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed Settlement Agreement. Even after the payment of attorneys' fees and costs and the service awards, all Settlement Collective Members will receive a check representing a reasonable estimate of their risk-discounted potential damages, as further explained in the Settlement Agreement. *See* Exhibit 1, § III.7. Plaintiffs' Counsel believes this is a fair result, given all of the facts and given Defendant's strong opposition that Settlement Collective Members are not entitled to any recovery at all.  All Opt-in Plaintiffs delegated authority to the Named Plaintiff and Plaintiffs' Counsel to resolve the Action on their behalf, and she along with Opt-In Plaintiff Tam have executed the Settlement Agreement. *See* Exhibit 1.

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a bona fide dispute and approve the Parties' motion.

## V. PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

As part of the FLSA settlement in this case, the Parties agreed that Plaintiff could seek the Court's approval of the amount specified in the Settlement Agreement in reasonable attorneys' fees and litigation costs. *See* Exhibit 1, § III.6.c. The FLSA requires courts to award reasonable attorneys' fees to successful plaintiffs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Generally, "[t]he amount of the fee . . . must be determined on the facts of each case," and "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429, 433 (1983).

"In assessing the reasonableness of contingency fees in FLSA settlements, many courts have found it helpful to rely on the Ninth Circuit's twenty-five percent benchmark for awarding attorney's fees in common fund cases." *Chapman v. Prescott Station Inc.*, No. CV-19-08208-PCT-DJH, 2019 U.S. Dist. LEXIS 161981, at *5-6 (D. Ariz. Sept 23, 2019) (citing *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Applying this calculation method, courts typically calculate [twenty-five percent] of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.")). "However, such fee awards can range from twenty (20) percent to thirty-three and three tenths (33.3) percent." *Id.* at *6 (citing *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013).

Here, the Settlement Agreement provides for attorneys' fees and costs that are well within the standard set by 9th Circuit courts. Using the Ninth Circuit's attorneys' fee award benchmark, Plaintiffs' Counsel's request for fees and expenses totaling approximately 21% of the total settlement is reasonable.

## VI. THE REQUESTED SERVICE PAYMENTS ARE REASONABLE

The Settlement Agreement allows Plaintiffs to seek Service Awards for the Named Plaintiff and Opt-in Plaintiff Tam to be paid out of the Gross Settlement Fund. Ex. 1, §

III.6.b. This payment is in addition to any payment they will receive as their Settlement Payments from the Net Settlement Fund. Service Awards are awarded at the district court's discretion. *Ramirez v. Thomas Arnold Inc.*, No. CV-17-00150-PHX-SMM, 2018 U.S. Dist. LEXIS 57520, at *6 (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). Such awards are typically distributed to Named Plaintiffs in collective or class action lawsuits because they play a crucial role in helping to bring claims that might otherwise not be pursued. *Id.* (citing *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013)). In addition, courts have found these awards are intended to compensate named plaintiffs for "work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action…" *Id.* (citing *Rodriguez*, 563 F.3d at 958).

The Service Awards sought here are in recognition of the Named Plaintiff's and Opt-in Plaintiff Tam's efforts in pursuing the claims raised in this Action on behalf of the Settlement Collective Members. Named Plaintiff and Opt-in Plaintiff Tam expended time and effort conferring with Plaintiffs' Counsel, filing and pursuing the Action, providing factual information to Plaintiffs' Counsel in support of the Action, communicating with Opt-in Plaintiffs, producing documents, assisting with Plaintiffs' Counsel's negotiation of this settlement, and ultimately resolving the Action on behalf of all Settlement Collective Members. Their request for Service Awards is reasonable.

## VII. CONCLUSION

This Settlement is a result of contested litigation and was reached after extensive settlement negotiations. The Parties engaged in a thorough analysis of the facts and the data at issue and the Settlement provides Settlement Collective Members with significant monetary relief in lieu of risky protracted litigation. Because the settlement is a fair and reasonable resolution of a bona fide dispute between the Parties, the Parties respectfully request that the Court grant their Joint Motion to Approve the Settlement Agreement, enter the proposed order, and dismiss the lawsuit with prejudice.

Dated: January 12, 2023.

| | |
|---|---|
| */s/ Robert W. Cowan* | */s/ Andrea G. Lovell* |
| Robert W. Cowan | Andrea Lovell, Bar No. 019882 |
| Texas Bar No. 24031976 | alovell@littler.com |
| *Admitted Pro Hac Vice* | Melissa Shingles, Bar No. 032645 |
| BAILEY COWAN HECKAMAN PLLC | mshingles@littler.com |
| Four Oaks Place | LITTLER MENDELSON, P.C. |
| 1360 Post Oak Blvd., Suite 2300 | Camelback Esplanade |
| Houston, Texas 77056 | 2425 East Camelback Road, Suite 900 |
| 713-425-7100 Telephone | Phoenix, AZ 85016 |
| 713-425-7101 Facsimile | Telephone:   602.474.3600 |
| rcowan@bchlaw.com | Fax No.:   602.957.1801 |
| | |
| *Attorneys for Plaintiffs* | Breanne Sheetz Martell, WSBA #39632 |
| | *(admitted pro hac vice)* |
| | bsmartell@littler.com |
| | Brian H. Rho, WSBA #51209 |
| | *(admitted pro hac vice)* |
| | brho@littler.com |
| | LITTLER MENDELSON, P.C. |
| | One Union Square |
| | 600 University Street, Suite 3200 |
| | Seattle, WA  98101.3122 |
| | Telephone:   206.623.3300 |
| | Fax No.:   206.447.6965 |
| | |
| | *Attorneys for Defendant* |

11

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed and/or emailed a copy of same to the following if non-registrants, this 12th day of January, 2023, to:

Robert W. Cowan
Bailey Cowan Heckaman PLLC
Four Oaks Place
1360 Post Oak Blvd., Suite 2300
Houston, Texas 77056
rcowan@bchlaw.com

*/s/ Suzy Walker*

4882-1035-3471.5 / 095402-1031